THE TOLEDO. PULP PLASTER CO. *v.* CHAMBERS ET AL.

*Sales — Rights of unpaid seller and subsequent purchaser — Automobile purchased from mortgagor — Before chattel mortgage filed — Section 8560, General Code — Unpaid seller in possession as bailee — Section 8434, General Code.*

1. By virtue of the provisions of Section 8560, General Code, the rights of a mortgagee of chattels are superior to those of a subsequent purchaser, who became such before the mortgage was deposited with the proper recording officer, but with knowledge of its existence.
2. Under Section 8434, General Code, the unpaid seller of goods, who is in possession of them, and whose claim is past due, may exercise his right of lien even though he is in possession as bailee of the purchaser.

(Decided March 10, 1919.)

ERROR: Court of Appeals for Lucas county.

*Mr. Warren J. Duffey* and *Mr. George C. Bryce,* for plaintiff in error.

*Mr. Edward H. Ray,* for defendants in error.

RICHARDS, J. The Toledo Pulp Plaster Company commenced an action in the court of common pleas for the replevin of a two-ton Velie automobile truck, claiming to own the same, and to be entitled to the immediate possession, and that the truck was wrongfully withheld by the defendants. The plaintiff secured the possession of the truck by virtue of the replevin thereof, and the trial resulted in a judgment in favor of the defendants in the sum of $876.64, the defendants not having executed a bond for the return of the property.

We are asked to reverse this judgment as being contrary to law and the evidence. The bill of exceptions discloses that the truck was sold by the defendants, who were the owners of it, to one John Johnson, on the morning of April 17, 1917, and that in part payment of the same they took from Johnson a chattel mortgage on the truck, in the amount of $800, securing certain notes, and placed the mortgage on file in the proper office at 11:45 o'clock, A. M., of that day. Immediately after the sale of the truck to Johnson he caused it to be driven to the office of the plaintiff company, and there consummated an agreement which had been discussed between him and the plaintiff, by which he sold the truck to the plaintiff, the value of the same to be credited upon a pre-existing indebtedness owing from him to the plaintiff, excepting that plaintiff advanced to Johnson a check of $280 to enable him to pay that amount to the defendants. Some six or eight months after the purchase by the plaintiff of the truck, it delivered the same to the defendants for the purpose of having certain repairs made, and upon the completion

of the repairs tendered to the defendants the reasonable value of the repairs and demanded the return of the truck. The defendants, however, refused to deliver it to the plaintiff without payment of the mortgage held by them, amounting to $800 and interest, which was then past due, and on such refusal this action in replevin was brought. The controversy between the parties is over the matter of priority, the plaintiff contending that it purchased the truck in good faith, before the mortgage which had been given by Johnson to the defendants had been deposited by the defendants with the county recorder, as required by statute. The plaintiff further contends that even if the mortgage of the defendants is prior, they are estopped from asserting the same as a ground for withholding the delivery of the truck, because they had received the same as a bailee for the purpose of repair simply, and on tender of the proper charge for repairs, the defendants would, in no event, have the right to retain possession of the truck. The defendants contend that the mortgage held by them is the prior lien, and that the plaintiff had knowledge of their mortgage when it purchased, and therefore did not purchase the truck of Johnson in good faith, and that the amount represented by the notes and mortgage held by defendants being past due they were justified in retaining possession until their claim was paid.

The priorities as between the parties to this action are to be determined by the provisions of Section 8560, General Code, which reads as follows:

"Section 8560. A mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith, unless the mortgage, or a true copy thereof, be forthwith deposited as directed in the next succeeding section."

If this section were to be given its grammatical construction, and due consideration given to the comma which appears after the word "purchasers," there is basis for argument that the requirement of good faith, which is imposed on mortgagees, does not apply to purchasers, and if such construction were adopted then a purchaser who buys property which is under chattel mortgage, even with knowledge thereof, the mortgage not having been left with the proper recording officer, would be entitled to priority over the mortgage. In view, however, of the history of this section, we can not give it the construction suggested. The section was originally enacted by the general assembly on February 24, 1846, and is found in 44 Ohio Laws, 61, and as there published the section contains no comma after the word "purchasers." This section is printed in the same form in 1 S. & C. Statutes, 475, and met with no change from the date of its enactment until it appears in the general revision of the statutes in 1880, where it is designated as Section 4150. The evident legislative intent, evidenced by the section as originally enacted, was to group subsequent purchasers

with mortgagees and to require that each should act in good faith in order to be entitled to priority over a chattel mortgage which had not been deposited as contemplated by that section. We can not hold that the insertion in the revision of 1880 of a comma after the word "purchasers" is sufficient to change the meaning of the act and to exempt such purchasers from the requirement of good faith. It is said in *State, ex rel. Nimberger et al.,* v. *Bushnell et al.,* 95 Ohio St., 203, that the reenactment of a statute in a code or revision does not change its meaning or construction unless the language of the revision clearly manifests the legislative intent to make such change.

Reason indicates that subsequent purchasers and mortgagees should be grouped together in the statute. Purchasers invest relying on their judgment as to the value of property, and secure title thereto by their purchase. Mortgagees take their security relying on their judgment as to the value of the property, and become the general owner, as laid down in *Robinson, Jr.,* v. *Fitch,* 26 Ohio St., 659. This suggestion strengthens the view that the section quoted was intended to group purchasers and mortgagees and make them subject to the same provision of good faith, and this view is further strengthened by the language of Section 8565, General Code. That section provides for the refiling of a chattel mortgage within the thirty days next preceding the expiration of the first filing, and contains a provision rendering it void against certain classes of persons unless so refiled, the classes of persons mentioned being creditors, subsequent purchasers and mortgagees in good

faith; and the section contains no comma after the word "purchasers." The two sections must be construed together; each section to impose the same duty and confer the same rights on purchasers.

We hold, therefore, that in order to entitle the plaintiff to protection as a purchaser of the truck he must have become such in good faith, and it has been so stated in the course of the opinion in *Cooper* v. *Koppes,* 45 Ohio St., 625. The court, speaking through Owen, C. J., uses the following language on page 630:

"The penalty which the statute had denounced against every unfiled mortgage, or conveyance intended to operate as a mortgage, of chattels, unaccompanied by immediate delivery, and followed by continued change of possession, is that it shall be absolutely void as against creditors and *bona fide* purchasers and mortgagees."

The evidence as to knowledge of the plaintiff at the time of purchase is in conflict. The defendant Chambers testified that before the sale from Johnson to the plaintiff was effected, he notified the plaintiff over the telephone that the defendants held a mortgage upon the truck, and there are some circumstances tending to corroborate this claim. The telephone conversation is denied by the plaintiff, but the trial judge found with the defendants on this proposition, and there being sufficient evidence in the record to sustain such finding we must decline to interfere therewith.

It is, however, insisted that the defendants, having received the truck as bailees, and for the purpose of repair, were not entitled to withhold the

delivery of the same from the plaintiff on tender of their proper charges for making the repairs. Counsel contend that the case falls within the general rule announced in 6 Corpus Juris, 1108, and that the defendants are estopped from setting up any claim under their mortgage without first having redelivered the property to the plaintiff, who was the bailor. Other authorities are cited which announce the same doctrine, but we hold the rights of the defendants are controlled by the language of paragraph 2 of Section 8434, General Code, and that the sellers, in this case the defendants, may exercise their right of lien, notwithstanding they were in possession of the truck as bailee of the buyer. It is not necessary to inquire what the rule of law might be in the absence of this statute, but by reason of the language of this statute the defendants were not estopped to set up their claim as they did, under the mortgage, insisting that by the provisions of the mortgage they were entitled to take or hold possession because they considered their security endangered.

We call attention to the state of the record in this case. The journal entry shows that the judgment was rendered on the 28th day of September, 1918, while the motion for new trial was filed on May 13, 1918. Suspecting that counsel for plaintiff would be unlikely to file a motion for new trial before they were defeated, we have examined the trial docket of the court of common pleas and find, according to the notation on that docket, that this case was decided on May 9, 1918. Counting from that date, the motion for new trial was in time, the 12th day of May having been Sunday. We sug-

gest that the record could be corrected by a *nunc pro tunc* order in the trial court.

*Judgment affirmed.*

KINKADE and CHITTENDEN, JJ., concur.